# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| ERIC MURDOCK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   2:11-cr-00008-DBH |
| | )   2:14-cv-00205-DBH |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Eric Murdock moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 135.) Following a jury trial, Petitioner was convicted of being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1), and the Court sentenced him, pursuant to 18 U.S.C. § 924(e), to a prison term of 216 months, followed by a term of three years of supervised release. (Judgment, ECF No. 110 at 2-3.) The First Circuit affirmed the conviction and sentence. *United States v. Murdock*, 699 F.3d 665, 667 (1st Cir. 2012).

The Court previously denied Petitioner's section 2255 request for relief under *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015).[1] (Decision and Order, ECF No. 192.) This recommended decision addresses Petitioner's remaining section 2255 claims.

---

[1] This Court's prior decision (Decision and Order, ECF No. 192) disposed of claims Petitioner asserted under *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015). Petitioner has appealed from the Court's decision on the *Johnson* claims; the First Circuit has issued an order that Petitioner either move for a voluntary dismissal of the appeal, or that he show cause why the appeal should not be dismissed, due to the lack of a final judgment. (*Murdock v. United States*, No. 16-1548 (1st Cir. Aug. 2, 2016).)

Following a review of Petitioner's motion and the Government's request for dismissal on the merits (Response, ECF No. 169), I recommend that the Court grant the Government's request, and dismiss Petitioner's motion.

## I.   DISCUSSION

### A.  Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has

recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Counsel's strategic decisions are afforded deference. *Strickland*, 466 U.S. at 681, 689-92 (noting that counsel's "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based," "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and a petitioner must have suffered prejudice).

A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002); *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) ("Counsel is not required to waste the court's time with futile or frivolous motions.") (quotation marks omitted).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).  In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)).  Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'"  *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  "Allegations that are so evanescent or bereft of detail that they cannot reasonably be investigated (and, thus, corroborated or disproved) do not warrant an evidentiary hearing."  *Id.* The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing.  *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B.  Claims and Analysis[2]

### 1.  Claims regarding the jury instructions (Grounds One, Eight, and Nine)

Grounds One, Eight, and Nine are based on Petitioner's argument that he is not guilty because the firearms he possessed were antiques and therefore not illegal under 18 U.S.C. §§ 921,

---

[2] Petitioner's claims are addressed in the order presented in his section 2255 motion, except where similar claims are grouped together.  Ground Fourteen is not discussed in this recommendation, because that claim was fully addressed in the Court's decision on the *Johnson* issues.

922(g)(1).[3]  In Ground One, Petitioner alleges that the Court erred when it failed to give an instruction that the term "firearm" excluded antique firearms.  (Motion at 5.)  Petitioner includes in Ground One a claim of ineffective assistance of appellate counsel.  (*Id.*)  Petitioner alleges in Ground Eight ineffective assistance of trial and appellate counsel regarding the issue of whether the guns were antiques.  (*Id.* at 24-25.)  In Ground Nine, Petitioner asserts evidence supported an instruction regarding antique guns.  (*Id.* at 26.)  Petitioner argues that he should have been acquitted because the Government did not prove the guns were not antiques.[4]  (*Id.*)

---

[3] Title 18 U.S.C. § 922(g)(1) provides in relevant part: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."

Title 18 U.S.C. § 921(a)(3) defines the term "firearm" and provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

Subsection 921(a)(16) defines the term "antique firearm" and provides:

> The term "antique firearm" means—
>
> **(A)** any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; or
>
> **(B)** any replica of any firearm described in subparagraph (A) if such replica—
>
> > **(i)**    is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or
> >
> > **(ii)**    uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade; or
>
> **(C)** any muzzle loading rifle, muzzle loading shotgun, or muzzle loading pistol, which is designed to use black powder, or a black powder substitute, and which cannot use fixed ammunition. For purposes of this subparagraph, the term "antique firearm" shall not include any weapon which incorporates a firearm frame or receiver, any firearm which is converted into a muzzle loading weapon, or any muzzle loading weapon which can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breechblock, or any combination thereof.

[4] In Petitioner's reply, he states:  "Basically, Petitioner suffered 'trial by ambush' as he was not apprised of the fact that [a] Government witness was going to testify that the guns he had witnessed Petitioner with were of the 'antique' variety."  (Reply, ECF No. 208 at 5.)

At trial, law enforcement officers identified the guns at issue as a Smith & Wesson .22 caliber revolver and a Taurus .38 caliber revolver.  (Trial Tr. I, ECF No. 122 at 176-77.)  At the conclusion of the evidence, counsel moved for acquittal, citing in part the Government's failure to prove the firearms were not antiques.  (Trial Tr. II, ECF No. 123 at 7-8.)  The Court denied the motion because the antique status of the guns was an affirmative defense that the defense failed to raise.  (*Id.* at 9-10.)  A prosecution witness had testified that Petitioner showed him the two guns at issue, and that Petitioner let the witness hold the guns after they arrived in a package sent to the witness's step-grandmother.  (Trial Tr. I at 141-43.)  The witness testified that one of the guns he saw was "more antiquey" than the one in the courtroom, and he remembered that the other gun was "shinier."[5]   (Trial Tr. I at 146.)  Counsel argued in closing:

> Now, [the witness] told you yesterday that while he was there . . . Mr. Murdock showed him a couple of guns. . . .  One he said looked similar but the one he saw was more antiquey, and the other one he said I don't remember - - I don't - - I remember it being shinier.  So ask yourself if those are the real guns that were recovered by the police.

---

[5] The following is the witness testimony, on direct examination, on which Petitioner bases his argument that there was evidence that the guns qualified as antique firearms:

> Q. . . . I'm showing you what's been marked for identification in my right hand as Government's Exhibit 4 and in my left hand as Government's Exhibit 5.
> A.      Okay.
> Q.      Do these firearms look anything like what Mr. Murdock showed you?
> A.      This one looks similar but it doesn't look exactly like the right one.
> . . .
> Q.      What were you saying about [Government's Exhibit 4]?
> A.      I thought it was a little bit bigger and had brown, like it was more antiquey.
> Q.      All right.  And did you only see it one time?
> A.      Yeah.
> Q.      For how long?
> A.      Five minutes.
> Q.      Okay.  And the Government's Exhibit 5 in my left hand, does that look like the firearm that you were shown?
> A.      About the same shape but I - - I remember it being shiny.
> Q.      Shinier?
> A.      Yeah.  I don't know, chrome or something, but – -

(Trial Tr. I, ECF No. 122 at 145-46.)

(Trial Tr. II at 40.)

Contrary to Petitioner's argument, the evidence did not support the affirmative defense. The testimony that one of the guns looked "more antiquey" and the other one was "shinier" than those shown to the witness at trial would not support a finding that the guns qualified as antiques. Instead, the witness described the appearance or luster of the surface of the gun, and did not attest to the date of manufacture or any of the structural or functional ways in which an antique firearm, or a replica of an antique firearm, is defined under 18 U.S.C. § 921(a)(16).

> When the antique firearm exception is raised as an affirmative defense, the defendant bears the burden to produce evidence sufficient to raise a genuine dispute about whether the firearm is an antique. Only then does the government need to prove beyond a reasonable doubt that the firearm is not an antique firearm.

*United States v. Pate*, 518 F.3d 972, 976 (8th Cir. 2008) (quotation marks omitted); *United States v. Basnett*, 735 F.3d 1255 (10th Cir. 2013) ("Every circuit court of appeals to consider the issue has treated the antique exception as [an] affirmative defense."). In this case, the record lacks any evidence that would support the affirmative defense.

In addition, because the issue was not raised on appeal, the claim is procedurally defaulted. Given the lack of merit of the defense, Petitioner has failed to demonstrate ineffective assistance of counsel. In short, although counsel did not persuade the Court to acquit, and counsel did not persuade the jury that the guns at trial were not the ones illegally possessed by Petitioner, counsel's performance was not deficient. *See Strickland*, 466 U.S. at 689. Appellate counsel was not required to include a non-meritorious argument on appeal. *See Hart*, 933 F.2d at 83. The ineffective assistance claim lacks merit.

### 2. Claim regarding lack of notice in the indictment of the Government's plan to seek an enhanced sentence (Ground Two)

Petitioner argues that his enhanced sentence, imposed pursuant to 18 U.S.C. § 924(e)(1), was illegal because the indictment did not cite section 924(e).[6]  (Motion at 6.)  Petitioner notes that the indictment cited section 924(a)(2), which restricts the term of imprisonment to a maximum of ten years.[7]

At sentencing, counsel argued that the Government failed to provide adequate notice that it would seek an enhanced penalty.  (Sentencing Tr. I, ECF No. 117 at 9-10, 16.)  The Government maintained that it provided notice through an amended synopsis filed several months before the trial.  (*Id.* at 16; Amended Synopsis, ECF No. 18 at 1.)  Petitioner contends in his section 2255 motion that notice provided in an amended synopsis deprived him of the constitutional protections he would have received had the notice been included in the indictment.  (Motion at 6.)

Petitioner's claim lacks merit.  In *United States v. Craveiro*, 907 F.2d 260 (1st Cir. 1990), the First Circuit rejected arguments essentially identical to those of Petitioner, except that Petitioner received pre-trial notice, whereas in *Craveiro*, the defendant did not receive notice until

---

[6] To the extent that Petitioner also argues that the Court erred when it engaged in judicial factfinding, i.e., when the Court, as opposed to the jury, found that Petitioner had the prior convictions that resulted in an enhanced sentence, the claim lacks merit.  *See United States v. Jiménez-Banegas*, 790 F.3d 253, 258-59 (1st Cir. 2015) (holding that the indictment need not mention a prior felony conviction in order for a statutory maximum penalty to apply "because it is a matter of recidivism, which 'is as typical a sentencing factor as one might imagine'") (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998)).

[7] Title 18 U.S.C. § 924(a)(2) states:  "Whoever knowingly violates . . . [18 U.S.C. § 922(g)] . . . shall be fined as provided in this title, imprisoned not more than 10 years, or both.  (Indictment, ECF No. 15.)

Title 18 U.S.C. § 924(e)(1) states:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

after trial.  In *Craveiro*, the defendant argued on appeal that the Government's failure to include in the indictment its intention to seek an enhanced penalty was both contrary to statutory intent and unconstitutional.  907 F.2d at 262.  The First Circuit noted that it "would normally expect the government to give a defendant pre-trial notice of possible sentence enhancement," but it held that "there is no statutory requirement that it do so."  *Id.* at 264.

The First Circuit also rejected the defendant's due process and equal protection arguments regarding lack of notice of the sentencing enhancement.  *Id.* at 264-65.  "[P]rocedural due process does not require pre-trial notice of the possibility of enhanced sentencing for recidivism.  It requires only reasonable notice of and an opportunity to be heard concerning the prior convictions."  *Id.* at 264.  The Court held that the defendant's due process claim lacked merit because the Government provided adequate notice before sentencing, and the defendant had the opportunity to contest his prior convictions.  *Id.*  The Court determined that the defendant's equal protection claim failed because the defendant did not "show that his selection was 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'"  *Id.* at 264-65 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  The First Circuit also concluded that the lack of a statutory requirement of pre-trial notification did not violate equal protection.  *Id.* at 265.

Petitioner, like the defendant in *Craveiro*, has failed to demonstrate a denial of due process or equal protection.  *See id.*  Because Petitioner's statutory and constitutional notice-related arguments fail on the merits, any related ineffective assistance claim also fails.  *See Tse*, 290 F.3d at 465.

**3. Claim that the Government committed prosecutorial misconduct when it withheld exculpatory evidence, and that counsel was ineffective for the failure to move to compel production of the exculpatory evidence (Grounds Three and Four)**

In Ground Three, Petitioner contends that the Government committed prosecutorial misconduct when it failed to produce an allegedly exculpatory letter, and that trial and appellate counsel were deficient for the failure to move to compel the Government to produce the letter. (Motion at 9-10.) Petitioner alleges in Ground Four that the Government also failed to preserve and produce fingerprints from the trunk of the vehicle that contained the firearms.[8] (Motion at 11-14.) Petitioner contends that although trial counsel raised the issue, appellate counsel did not. (*Id.* at 15.)

Regarding Ground Three, the section 2255 motion did not identify the letter that was the subject of this claim, but Petitioner's reply confirms that the letter was the one discussed in the Government's response, i.e., a letter from Petitioner's wife to a police chief. (Motion at 9; Response at 9; Reply, ECF No. 208 at 7.) At trial, the police chief testified that he received a one-page hand-written note from Petitioner's wife, but that he was unable to find the note, and did not remember anything about the note. (Trial Tr. I at 231.) In closing argument, counsel argued that the Government's failure to produce the note gave rise to reasonable doubt that the guns belonged to Petitioner.[9] (Trial Tr. II at 43.)

---

[8] The search that is the subject of Petitioner's section 2255 claims took place at a home where Petitioner was staying following his release on bail conditions on an unrelated charge; the bail conditions prohibited possession of firearms and required him to submit to searches of his home and his person. *United States v. Murdock*, 699 F.3d 665, 667 (1st Cir. 2012).

[9] Counsel said in closing:

> In the transcript [of the telephone call] it says, Mr. Murdock says, hey, they're not mine. They're a gift. And the police chief has this discussion with the caller about could you just have a note sent in, please, send me a note so that – that the guns are a gift to someone else. And the caller indicated that that would be my wife, yes, Carol Brawn would send that note in indicating that they're a gift. Well, we learned yesterday that yes, in fact, a handwritten – one-page handwritten note came in to

10

Petitioner's prosecutorial misconduct claim regarding Ground Three is procedurally defaulted because he did not raise this argument at trial or on appeal. *See Owens*, 483 F.3d at 56. Therefore, the Court may consider the claim only if Petitioner can demonstrate deficient performance by counsel and prejudice. *See id.*

Counsel may have made a strategic decision not to file a motion to compel production of Petitioner's wife's note; Petitioner has not demonstrated otherwise, and counsel's decisions are afforded deference. *See Strickland*, 466 U.S. at 681, 689-90. Given counsel's use of the absence of the note in closing argument, Petitioner has failed to demonstrate either deficient performance based on the decision not to move to compel production of the note, or prejudice to Petitioner.[10] *See id.* at 689-92.

Ground Four is procedurally defaulted, because the issue of the Government's failure to preserve and produce fingerprint evidence was not raised on appeal. *See Owens*, 483 F.3d at 56. During the trial, a police officer testified that the vehicle, in which the guns and ammunition were found in the trunk, was covered with "heavy dust," and that there were fingerprints in the dust. (Trial Tr. I at 174-77.)  The Government represents that it did not arrange for an analysis of any

---

the police station from Carol Brawn, but he's looked and he cannot find it.  Ask yourself, is that reasonable doubt?  Wouldn't it be nice to know what that note said.

(Trial Tr. II, ECF No. 123 at 43.)

[10] Even if the prosecutorial misconduct claim in Ground Three had not been procedurally defaulted, it would have failed on the merits. *See Brady v. Maryland*, 373 U.S. 83 (1963).  The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The First Circuit has held that "[t]o establish a *Brady* violation, 'a defendant must make three showings. The evidence at issue (whether exculpatory or impeaching) must be favorable to the accused; that evidence must have been either willfully or inadvertently suppressed by the government; and prejudice must have ensued.'" *United States v. Alverio-Meléndez*, 640 F.3d 412, 424 (1st Cir. 2011) (quoting *United States v. Mathur*, 624 F.3d 498, 503 (1st Cir. 2010)) (quotation marks omitted). Assuming, for the sake of argument, that Petitioner's wife's note would have been both favorable to Petitioner and material to the trial, and that the Government either willfully or inadvertently failed to produce it, Petitioner has failed to demonstrate that he was prejudiced, given the ample evidence at trial that Petitioner possessed the firearms.  (Trial Tr. I at 175-77, 190-91, 204-06.)

fingerprints found on the car.[11]  (Response at 9-10.)  In closing argument, counsel used the lack of fingerprint evidence to argue that the Government had failed to prove its case beyond a reasonable doubt:

> What about the MG or the Triumph, the car that was covered with dust, [an officer] said heavy dust, fingerprints in the dust.  [Another officer] said partial prints, smudge prints on the trunk.  Ask yourself, is that reasonable doubt?  Ask yourself, whose prints or whose DNA might have been there.

(Trial Tr. II at 42-43.)  Trial counsel's decision simply to use the lack of evidence to show that the Government had not proven its case is entitled to deference.  *See Strickland*, 466 U.S. at 681, 689-90.   Petitioner thus has failed to demonstrate that counsel's decision was deficient or that Petitioner was prejudiced.  *See id.* at 689-92.

### 4.  Claim that the Court erred by not instructing that the effect on commerce must be substantial (Ground Five)

In Ground Five, Petitioner alleges that the Court failed properly to instruct the jury on the definition of "commerce" and the requirement that commerce be "substantial," and counsel provided ineffective assistance on this issue.  (Motion at 17-18.)  Petitioner waives this argument in his reply.  (Reply at 9.)  Therefore, the Court need not further consider the claim.

Even if Petitioner had not waived the claim, however, Petitioner would not have succeeded.  The claim is procedurally defaulted, and there is no basis for a claim of ineffective assistance of counsel.  The Court instructed the jury that one of the elements it must find was

> that the firearms were connected with interstate commerce. This means that the firearms at any time after they were manufactured moved from one state to another. The travel need not have been connected to the charge in the indictment, need not have been in furtherance of any unlawful activity, and need not have occurred while Eric Murdock possessed the firearms. The Government does not have to prove that

---

[11] At trial, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that the ammunition had been sent away for fingerprint identification, but the laboratory had not yet started the analysis at the time of trial. (Trial Tr. I at 237-39.)  He testified that the firearms were not sent for fingerprint analysis, because several people had handled them, and, in the agent's experience, it was somewhat rare to find a fingerprint on a firearm.  (*Id.* at 239-40.)

Eric Murdock knew that his conduct was illegal. The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.

(Trial Tr. II at 18-19.)  The instruction was not in error.  *See United States v. Combs*, 555 F.3d 60, 65, 66 (1st Cir. 2009).  In *Combs*, the First Circuit applied "a 'minimal nexus' standard, requiring proof only of interstate travel of a firearm or ammunition."  *Id.* at 65 (quoting *Scarborough v. United States*, 431 U.S. 563, 575 (1977)).  The Court held that "there was sufficient evidence for a jury to conclude that either the firearm or the ammunition were 'in or affecting commerce' as required by 18 U.S.C. § 922(g)."  *Id.* at 66.  Because Petitioner's underlying claim lacked merit, the claim of ineffective assistance of counsel would have failed had Petitioner not waived it.  *See Tse*, 290 F.3d at 465.

### 5.  Claim that the Court erroneously found at sentencing that Petitioner committed the offense as part of a pattern of criminal conduct engaged in as a livelihood (Ground Six)

In Ground Six, Petitioner alleges that he did not commit the offense as part of a pattern of criminal conduct engaged in as a livelihood.  (Motion at 19; Reply at 18-19.)  He contends that he was a commercial fisherman and construction company owner, and, therefore, he did not earn his livelihood as a criminal.  (*Id.*)  In his section 2255 motion, Petitioner asserts that appellate counsel was ineffective because counsel failed to raise this issue on appeal.  (*Id.* at 20.)

The claim is procedurally defaulted because it was not raised on appeal.  *See Owens*, 483 F.3d at 56.  Furthermore, it appears that the section of the sentencing guidelines regarding criminal livelihood, USSG § 4B1.3, played no role in the Court's determination of the sentencing guidelines range.  (Sentencing Tr. II, ECF No. 118 at 26-33.)  Accordingly, Petitioner's underlying claim is without merit, and the related ineffective assistance claim also fails.  *See Tse*, 290 F.3d at 465.

13

6.  **Claim that the Court and counsel failed to address witness perjury at the suppression hearing and at trial (Ground Seven)**

Through Ground Seven, Petitioner asserts that a prosecution witness committed perjury at the suppression hearing and at trial, and neither counsel nor the Court addressed the issue.  (Motion at 21-22.)  Petitioner cites alleged inconsistencies among the police report, the suppression testimony, and the trial testimony.  (*Id.* at 21.)  Petitioner contends the perjury concerned (1) whether the officer questioned Petitioner during the search; (2) what Petitioner said about the color of the bag in which the guns and ammunition were found during the search; and (3) whether Petitioner arrived at the searched residence in a car or a truck.[12]  (*Id.*)

In Petitioner's reply, he argues that, at a minimum, inconsistencies in the officer's testimony demonstrate bad faith by the Government.  (Reply at 9-10.)  He also appears to allege that had the Government produced the letter that is the subject of his claim in Ground Three, the officer may not have been emboldened to provide false testimony.  (*Id.*)

The claim is procedurally defaulted because, although Petitioner challenged on appeal the denial of his motion to suppress, he did not raise the argument he now asserts in the section 2255 motion.  *See Owens*, 483 F.3d at 56.

---

[12] At the suppression hearing, the officer testified essentially that after other officers had found, in the trunk of a car in a garage on the premises, a bag that held guns and ammunition, he took the bag and approached a group that included Petitioner.  (Suppression Tr., ECF No. 46 at 35-37.)  The officer testified that he had the bag out of sight of the group as he approached and said: "[W]e found the bag, the red bag - - the blue bag with your weapons in it to the crowd that was there . . . ."  (*Id.* at 35-38.)  The prosecutor asked if the group included Petitioner.  (*Id.* at 36.)  The officer replied:  "It was actually Mr. Murdock that corrected me and said it was red.  And I said, well, actually it is red.  And I said, are they yours, and he adamantly denied knowledge of the bag or the weapons."  (*Id.*)  The prosecutor asked:  "So it's your contention based on your experience that when you said, I found your guns in a blue bag, the red bag was not in Mr. Murdock's sight?"  (*Id.* at 38.)  The officer replied:  "No."  (*Id.* at 39.)  The prosecutor asked:  "And he immediately responded to you by saying, actually it's a red bag?"  (*Id.*)  The officer replied:  "Well, he started by saying you mean the red - - and at that point he kind of smiled at me."  (*Id.*)  The prosecutor asked:  "Stopped himself."  (*Id.*)  The officer replied.  "Yeah."  (*Id.*)  At trial, the witness testified similarly, although there are minor differences that Petitioner argues demonstrate either perjury or, at a minimum, inconsistencies in the testimony.  (Motion, ECF No. 135 at 21; Reply at 9-10; Trial Tr. I at 205-06.)

Petitioner's ineffective assistance claim lacks merit because counsel cross-examined the officer on the discrepancies between his police report and his testimony in the suppression hearing: "And isn't it correct that nowhere in that report is there a discussion of you coming up the hill with the bag saying I found your guns, and there's no mention in your report of him responding it's a red bag?" (Suppression Tr., ECF No. 46 at 48.)  The officer replied:  "That's correct."  (*Id.*)  Counsel cross-examined the witness at trial as well regarding the fact that the police report did not contain a reference to the question about a blue bag.  (Trial Tr. I at 210.)  Under the circumstances, neither trial nor appellate counsel's performance was deficient.  *See Strickland*, 466 U.S. at 687; *Hart*, 933 F.2d at 83.

Furthermore, the officer's testimony about whether he questioned Petitioner is irrelevant for purposes of Petitioner's section 2255 claim, because the Court concluded that Petitioner was not in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that the procedural safeguards that must be used to protect the Fifth Amendment privilege against self-incrimination apply to custodial interrogations).  (Suppression Tr. at 159.)  On that basis, the Court concluded that it need not reach the issue whether the officer's "apparently conscious misdirection in referring to a blue bag while holding the red bag out of sight seems to be designed to produce a response," i.e., whether the officer's statement about the color of the bag amounted to an interrogation for *Miranda* purposes.  (*Id.*)  The First Circuit affirmed.  *Murdock*, 699 F.3d at 670.

Because Petitioner's underlying claim is without merit, his related ineffective assistance claim also fails.  *See Tse*, 290 F.3d at 465.

### 7.  Claim based on counsel's alleged waiver of Petitioner's Fourth Amendment expectation of privacy (Grounds Ten, Eleven, Twelve)

In Grounds Ten, Eleven, and Twelve, Petitioner alleges that trial and appellate counsel were ineffective because (a) at the suppression hearing, trial counsel waived, without Petitioner's

consent, the issue of Petitioner's expectation of privacy, and (b) appellate counsel failed to raise the issue.[13]   (Motion at 28-29, 31-33, 34-35.)   Petitioner argues that he had a privacy interest in a garage that someone had "sublet by barter" to him, that exigent circumstances did not exist, and that a warrantless search violated the Fourth Amendment.   (*Id.* at 28.)   He contends that the bail compliance search of his residence was illegal because he had no legal residence in Maine, and his trailer was registered in Florida.   (*Id.* at 31, 34.)   He also argues that the trailer could not be searched as a motor vehicle.   (*Id.* at 34.)   Petitioner further asserts in Ground Twelve that trial counsel had a conflict of interest, although he does not specify any issue other than ineffective assistance of counsel for the failure to move successfully to suppress the firearms and ammunition.   (*Id.* at 34.)

The claim is procedurally defaulted because the issues were not raised on appeal.   *See Owens*, 483 F.3d at 56.   Petitioner's ineffective assistance claim lacks merit.   The record lacks any evidence to suggest that counsel waived any issue regarding Petitioner's expectation of privacy. Furthermore, the search was conducted pursuant to bail conditions, which diminished any expectation of privacy.   (Suppression Tr. at 6-8.)   *See United States v. Graham*, 553 F.3d 6, 15-16 (1st Cir. 2009) (discussing the "substantially diminished expectation of privacy" in the context of a conditional release pursuant to a probation order).   In addition, the homeowner consented to the search of the home and premises, and Petitioner had no legitimate expectation of privacy in items found in a stored car when Petitioner neither owned nor leased the car, and he disclaimed the bag found in the car.   (Suppression Tr. at 22, 28, 92.)   *See Fernandez v. California*, 134 S. Ct. 1126, 1129-30 (2014) (noting that "police officers may search jointly occupied premises if one of

---

[13] At the suppression hearing, an officer testified that items that the homeowner said belonged to Petitioner were found in a trailer at the home where Petitioner was staying.   (Suppression Tr. at 22, 32-33, 41.)   Petitioner moved in limine to exclude evidence of the ammunition found in the trailer.   (Motion in Limine, ECF No. 67.)   At trial, the Court noted that evidence of the ammunition found in the trailer was not the subject of the charged crime.   (Trial Tr. I at 21.) However, the Court concluded that the evidence was relevant to the charged crime and was not unfairly prejudicial, and, therefore, the Court denied the motion, pursuant to Fed. R. Evid. 401, 402, and 403.   (*Id.*)   Trial counsel preserved the issue.   (*Id.* at 181.)

the occupants consents," and discussing exceptions that do not apply here); *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir. 1982) (holding that the appellant did not have a reasonable expectation of privacy in the contents of a car, in part because he did not own the car, and in part because the appellant did not claim any interest in personal belongings in the car). Petitioner also consented to the search of his trailer.[14]  (Suppression Tr. at 41-43.)  *See United States v. Zapata*, 18 F.3d 971, 977 (1st Cir. 1994) (noting, in the context of a search of a vehicle, that "it is settled law that the act of handing over one's car keys, if uncoerced, may in itself support an inference of consent to search the vehicle," and the failure to inform of the right to refuse permission does not preclude a finding of consent).

Finally, because Petitioner does not allege that counsel had any specific conflict of interest, that allegation may be dismissed.  *See David*, 134 F.3d at 478.  In sum, there is no basis for Petitioner's claim of ineffective assistance of trial or appellate counsel.  *See Tse*, 290 F.3d at 465.

### 8. Claim regarding the motion in limine to exclude an audio recording of Petitioner's voice (Grounds Thirteen, Twenty-Four)

In Ground Thirteen, Petitioner asserts that the Court erred when it denied his motion in limine to exclude an audio recording of a telephone conversation between Petitioner and the South Berwick Police Chief, and he alleges that trial and appellate counsel were ineffective regarding this issue.  (Motion at 37-39.)  Petitioner argues that there was no foundation for the introduction of the recording in evidence.  (*Id.* at 37.)  He also alleges that either someone tampered with the

---

[14] At the suppression hearing, an officer testified that Petitioner claimed ownership of the trailer, and that the trailer was registered to Petitioner.  (Suppression Tr. at 41.)  The officer testified:

> I indicated to [Petitioner] that we were going to search the trailer and it was locked and could we have the keys to the trailer.  He gave us a wad of keys to which none fit the locks.  We indicated to him that we would probably be breaking the lock to go in.  He said, would you just please break the small lock, it's less expensive to replace, which we did.

(*Id.* at 42.)  The officer described Petitioner's demeanor as "cooperative" during the conversation.  (*Id.* at 42-43.)

17

audio recording or there was an error, because the words "hypothetical" and "hypothetically" were missing from the recording.  (*Id.*)  Petitioner contends the recording error prevented the jury from making an informed decision.  (*Id.* at 37, 39.)

Petitioner alleges in Ground Twenty-Four that the Government committed prosecutorial misconduct by playing audio recordings of Petitioner's voice to witnesses before the trial without prior notice to Petitioner, and counsel was ineffective with respect to the issue.  (*Id.* at 72.)  The reply restricts the claim to the tampering allegation and related ineffective assistance.  (Reply at 12.)

Counsel moved to exclude the audio recording because it could not be authenticated pursuant to Rule 901 of the Federal Rules of Evidence.  (Motion in Limine, ECF No. 66; Trial Tr. I at 228.)  At trial, counsel argued that the authentication of the tape should take place outside the presence of the jury.  (Trial Tr. I at 17-18.)  The Court denied the motion and admitted the audio recording on the basis that the content of the recording provided the necessary authentication.[15] (Trial Tr. I at 20-21, 228-29.)  The First Circuit concluded that the Court did not err when it admitted the audio recording or when it determined that the transcript of the recording, combined with the content of the recording, was sufficient to authenticate the recording.  *Murdock*, 699 F.3d at 670-71.

To the extent Petitioner's underlying claim regarding admissibility of the audio recording was addressed on appeal, he may not pursue it in a section 2255 motion.  *See Tracey v. United States*, 739 F.2d 679, 682 (1st Cir. 1984) ("Issues disposed of on a prior appeal will not be reviewed again by way of a 2255 motion.").  To the extent Petitioner makes a separate argument that the

---

[15] The Court permitted the Government to show the jury a transcript of the audio recording while the recording was played, but the Court did not admit the transcript in evidence.  (Trial Tr. I at 229.)  The Court concluded that the testimony of witnesses was not in itself sufficient to authenticate the audio recording, because the witnesses did not identify what they had listened to in order to identify Petitioner's voice.  (*Id.* at 127-28, 150-51, 228.)

Government failed to provide advance notice that it planned to play a recording of Petitioner's voice to trial witnesses prior to trial, the argument is procedurally defaulted and fails on the merits because the recording was otherwise authenticated.  (Trial Tr. I at 20-21, 228-29.)  *Murdock*, 699 F.3d at 670-71.  Petitioner cannot demonstrate either deficient performance or prejudice, and the ineffective assistance claim thus fails.  *See Strickland*, 466 U.S. at 687; *Hart*, 933 F.2d at 83.

Petitioner's claim that there was an error in the audio recording, or that someone tampered with the recording, also fails because he has not demonstrated that prejudice resulted.  Specifically, even if the Court were to assume that Petitioner could demonstrate that the words "hypothetical" and "hypothetically" were missing from the recording, Petitioner has not demonstrated that the alleged missing words deprived him of a fair and reliable trial.  *See Strickland*, 466 U.S. at 687.

### 9.   Claim regarding the base offense level (Grounds Fifteen and Sixteen)

In Grounds Fifteen and Sixteen, Petitioner argues that the base offense level of 20 was too high.  (Motion at 47, 50.)  He also alleges ineffective assistance of appellate counsel regarding the issue.  (*Id.* at 45, 51.)

In Objection No. 6 to the presentence investigation report, counsel argued that the base offense level should be 14 or, alternatively, not higher than 20.  The Court determined the base offense level pursuant to USSG § 2K2.1(a)(4), as reflected by the Court's decision to overrule Petitioner's Objection No. 6.  (Sentencing Tr. II at 27, 32.)  Section 2K2.1(a)(4)(A) provides that the base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."

Petitioner's section 2255 argument, in contrast, is based on Amendment 614, which concerns USSG § 2A2.2.  (Motion at 47, 52.)  Section 2A2.2 is not relevant to the possession offense for which Petitioner was sentenced; rather, it applies when the offense conduct involves

aggravated assault.  In short, the claim is procedurally defaulted, and Petitioner cannot demonstrate either deficient performance or prejudice.  *See Strickland*, 466 U.S. at 687; *Hart*, 933 F.2d at 83.

### 10. Claim that the predicate crimes information in the presentence investigation report is based on fraudulent police reports (Ground Seventeen)

In Ground Seventeen, Petitioner asserts that the predicate crimes information contained in the presentence investigation report was based on unproven and fraudulent statements in police reports.  (Motion at 54.)  He also alleges ineffective assistance of appellate counsel regarding the issue.  (*Id.* at 55.)

On appeal, Petitioner raised the issue of sufficiency of the evidence of the Florida and Virginia predicate crimes on which his status as an armed career criminal was based.  *Murdock*, 699 F.3d at 671-72.  However, he did not challenge the predicate crimes based on alleged fraud in police reports, and, therefore, the issue is procedurally defaulted.  Furthermore, the issue fails on the merits because the Court's determination of Petitioner's enhanced sentence is based on Petitioner's prior convictions, not statements contained in police reports or summaries of police reports.  (Decision and Order, ECF No. 192 at 8 & n.13.)  Because the underlying issue lacks merit, Petitioner's related ineffective assistance claims fail as well.  *See Tse*, 290 F.3d at 465.

### 11. Claim regarding the identification of the guns (Ground Eighteen)

Petitioner asserts in Ground Eighteen that the Court erred when it permitted just two guns to be presented for identification; he alleges trial and appellate ineffective assistance as to this issue.  (Motion at 56-57.)

In a sidebar conference at trial, counsel told the Court: "The defendant wishes me to object at this point, that showing him one gun is unnecessarily suggestive and that he should be shown a number of guns to see if he can pick out the particular gun involved in this case."  (Trial Tr. I at

144.)  The Court overruled the objection, stating: "I understand the quasi-lineup objection, but that can be pursued on cross-examination or closing argument in terms of the context."  (*Id.* at 145.)

The claim is procedurally defaulted because the issue was not raised on appeal.  In addition, the mere fact that the objection was overruled does not render counsel's performance ineffective. *See Strickland*, 466 U.S. at 689.  Furthermore, there was ample evidence that the guns offered in evidence at trial were Petitioner's guns.  (Trial Tr. I at 175-77, 190-91, 204-06.)  Appellate counsel was not required to include a non-meritorious argument on appeal regarding the identity of the guns offered in evidence at trial.  *See Hart*, 933 F.2d at 83.

### 12. Claim regarding the use of prior convictions based on judgments under alias names (Ground Nineteen)

In Ground Nineteen, Petitioner argues that the Court abused its discretion at sentencing by relying on Petitioner's aliases, when it had previously ruled it need not make any finding regarding the sufficiency of the evidence of the aliases.  (Motion at 58, 60.)  Petitioner apparently refers to the Court's ruling at sentencing on Petitioner's Objection No. 3 to the presentence investigation report.  (*Id.* at 58.)  In the objection, Petitioner argued that there was insufficient evidence of three of the four aliases alleged in the presentence investigation report.  At sentencing, the Court noted the objection and concluded that it need not make a finding on sufficiency of the evidence as to the record support for those aliases, because such a finding would have no effect on the sentence. (Sentencing Tr. I at 4.)

At sentencing and on appeal, counsel addressed the issue of the misspelling of Petitioner's name and the mistaken inclusion of an additional name in the documentation of Petitioner's prior convictions.  This was a separate argument from Petitioner's Objection No. 3, and counsel discussed the misspellings as part of his argument under Objection No. 7 to sufficiency of the evidence of the prior convictions.  (*Id.* at 20-23, 28-29.)  The Court concluded that the misspellings

did not present a serious challenge to Petitioner's identity, and it overruled the objection to the use

of documents that contained misspellings.  (*Id.* at 46-47.)  The Court also found that the use of

another name in a Virginia document was a scrivener's error.  (*Id.* at 49-50.)  Petitioner raised the

issue on appeal, and the First Circuit concluded that the Court did not commit error.  *Murdock*,

699 F.3d at 671-72.

The claim regarding the aliases is procedurally defaulted because Petitioner did not raise it

on appeal.  Although the Court made findings regarding the misspellings of Petitioner's name, it

made no finding regarding aliases, and, therefore, counsel had no reason to pursue Objection No.

3 on appeal.  Consequently, Petitioner has failed to demonstrate either deficient performance or

prejudice, and the ineffective assistance claim thus fails.  *See Tse*, 290 F.3d at 465.

### 13. Claim that the Court erred in denying Petitioner the right to both represent himself and have assistance of counsel at trial, and to represent himself at sentencing (Ground Twenty)

In Ground Twenty, Petitioner argues that the Court abused its discretion when it denied

him the right to both represent himself and have the assistance of counsel at trial, and to represent

himself alone at sentencing.[16]  (Motion at 61.)  Petitioner alleges, as evidence of prejudice, that

counsel failed to advise him adequately regarding a marital privilege, and counsel failed to

impeach a Government witness.  (*Id.*) Petitioner essentially alleges that, had he been functioning

---

[16] Related to this claim, Petitioner requested that the trial record be corrected as to what he told the Court in response to the Court's question: "Are you making a request that you want to proceed before this jury with no lawyer?"  (Trial Tr. I at 6; Motion, ECF No. 191 at 9-10; Attachment to Motion, ECF No. 191-1 at 6.)  Petitioner asked that the record be corrected to add that he said "I want to do the talking" to his response to the Court's question, such that his response was in substance (as corrected): "No, I'm making a request that I can, I want to do the talking, I'd like to assist in my own defense."  (*Id.*)  The Court denied the motion to correct the record.  (Order, ECF No. 201.)

In Petitioner's reply, he also alleges that the Court failed to inform him fully regarding his right to proceed without counsel, and he argues that his decision not to proceed pro se therefore was not voluntary.  (Reply at 17.)  A claim of an involuntary waiver applies when a defendant relinquishes the right to counsel without an adequate warning from the court about "the pitfalls of self-representation."  *See United States v. Woodard*, 291 F.3d 95, 109 (1st Cir. 2002) (citing *Faretta v. California*, 422 U.S. 806 (1975)).  *Woodard* does not apply to Petitioner's claim, because Petitioner did not relinquish the right to counsel.

as his own counsel, he would have done a better job than counsel. (*Id.* at 61, 63.) The claim that the Court abused its discretion regarding Petitioner's request to both represent himself and have counsel is procedurally defaulted because Petitioner did not raise the issue on appeal.

Petitioner's ineffective assistance claim against trial counsel also fails because counsel played no role in the Court's colloquy with Petitioner as to whether Petitioner would have trial counsel. (Trial Tr. I at 3-6.) At sentencing, it does not appear that Petitioner asked to represent himself without counsel.[17] Furthermore, the Court noted that it had reviewed Petitioner's own filings in addition to counsel's filings. (Sentencing Tr. II at 2.) Petitioner also had the opportunity to and did speak for himself during allocution. (*Id.* at 37-41.)

Appellate counsel's decision not to raise the issue of self-representation on appeal was not deficient, nor was Petitioner prejudiced, because, as the Court told Petitioner, he had the right either to represent himself or to be represented by counsel, but he did not have the right to serve as co-counsel with his attorney. (Trial Tr. I at 6.) *See McKaskle v. Wiggins*, 465 U.S. 168, 182-83 (1984) (holding that a defendant's Sixth Amendment right to conduct his own defense does not require a trial judge to permit a "hybrid" of self-representation and representation by counsel) (quotation marks omitted); *United States v. Washington*, 434 F.3d 7, 16 (1st Cir. 2006) (noting that "district courts have discretion to deny hybrid representation outright") (quotation marks omitted). Because Petitioner did not have a constitutional right to both represent himself and be represented by counsel, his related ineffective assistance claim also fails. *See Tse*, 290 F.3d at 465.

---

[17] Petitioner states in his section 2255 motion that he made a request at the continued sentencing hearing to represent himself. (Motion at 61.) The transcript of the continued sentencing does not appear to reflect such a request, but Petitioner did request the appointment of counsel to represent him on appeal, "because [trial counsel] doesn't do appeals . . . ." (Sentencing Tr. II, ECF No. 118 at 39.)

### 14. Claim regarding notice of sentencing rulings (Ground Twenty-One)

Petitioner alleges in Ground Twenty-One that the Court failed to provide Petitioner with notice of the Court's sentencing rulings, that the rulings should have been appended to the pre-sentence investigation report, and that both trial and appellate counsel were ineffective because they failed to raise the issue.  (Motion at 64-65.)

In Petitioner's reply, he states that he has withdrawn this claim.  (Reply at 21.)  Because Petitioner's withdrawal of the claim confirms that he concedes, as a matter of fact, that he received sufficient notice, both the notice claim and the related ineffective assistance claim lack merit.

### 15. Claim regarding entrapment (Ground Twenty-Two)

In Ground Twenty-Two, Petitioner claims that the felon-in-possession law unfairly entraps persons who innocently come into possession of guns, because it contains no option for voluntary relinquishment of the guns.  (Motion at 67.)  Petitioner asserts that trial counsel requested an innocent possession defense jury instruction, but failed to renew the request, and appellate counsel failed to raise the issue.  (*Id.* at 67-68.)

In Petitioner's reply, he withdraws Ground Twenty-Two.  (Reply at 18.)  The claim would not have succeeded in any event.  The claim is procedurally defaulted because it was not raised on appeal, and the ineffective assistance claim lacks merit.  Trial counsel unsuccessfully challenged the indictment on Second Amendment grounds; the Court denied the motion based on *District of Columbia v. Heller*, 554 U.S. 570 (2008).  (Motion to Dismiss, ECF No. 70; Trial Tr. I at 18-19.)  Trial counsel also requested an innocent possession jury instruction, and counsel preserved the objection after the Court found that, under *United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000), the evidence was insufficient to support the instruction.  (Trial Tr. II, ECF No. 123 at 2-4.)

The fact that trial counsel was unsuccessful in persuading the Court to rule in Petitioner's favor on either issue does not render counsel's performance deficient.  *See Strickland*, 466 U.S. at 689.  Appellate counsel was not required to include a non-meritorious argument on appeal.  *See Hart*, 933 F.2d at 83.  Furthermore, Petitioner was not prejudiced because, as Petitioner concedes, his underlying arguments lack merit.  *See Heller*, 554 U.S. at 626 (noting that "nothing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); *Mason*, 233 F.3d at 624 (holding that the innocent possession defense requires evidence that the firearm was obtained innocently and that possession was transitory).

### 16. Claim that appellate counsel failed to file an *Anders* brief (Ground Twenty-Three)

In Ground Twenty-Three, Petitioner alleges that appellate counsel provided ineffective assistance for the failure to file an *Anders* brief and for the failure to enable Petitioner to preserve all possible non-frivolous grounds for appeal.[18]  (Motion at 69-71.)  Petitioner argues that the First Circuit erred when it denied his motion to file a supplemental appellate brief pro se.  (*Id.* at 69.)

Appellate counsel was not required to include a non-meritorious argument on appeal.  *See Hart*, 933 F.2d at 83.  In addition, appellate counsel was not required to file an *Anders* brief, as an *Anders* brief is required when counsel moves to withdraw based on a conclusion that an appeal would be frivolous.  *See Anders v. California*, 386 U.S. 738, 744 (1967) (holding that an attorney's motion to withdraw on grounds that an appeal is "wholly frivolous" must be "accompanied by a brief referring to anything in the record that might arguably support the appeal").  Counsel did not move to withdraw in Petitioner's case; on the contrary, appellate counsel represented Petitioner through the multi-issue appeal.

---

[18] *Anders v. California*, 386 U.S. 738 (1967).

In this case, counsel might have simply and logically decided to limit the issues to be argued on appeal.  "Neither *Anders* nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "As a general rule, appellate litigators should winnow their stable of legal arguments, retaining their most effective claims and putting unpromising claims to pasture before seeking appellate review."  *United States v. Slade*, 980 F.2d 27, 30 (1st Cir. 1992).  Thus, counsel's decision not to argue on appeal every point identified by Petitioner was not deficient, nor was Petitioner prejudiced by counsel's decision.

Finally, this Court lacks the authority to review the order of the First Circuit to deny Petitioner's request to file a pro se supplemental appellate brief.  "District courts lack jurisdiction to review the decisions of appellate courts; instead, the habeas determinations of district courts are reviewable by the Courts of Appeals."  *Cardona v. Beeman*, 382 F. App'x 376, 378 (5th Cir. 2010) (per curiam) (citing 28 U.S.C. § 2253(a)).

### 17. Claims regarding criminal history points (Ground Twenty-Five)

In Ground Twenty-Five, Petitioner argues that four prior convictions should not have resulted in criminal history points because the convictions did not carry felony punishments. (Motion at 74.)  Specifically, Petitioner challenges the criminal history points that were assigned based on the following convictions: (1) a 2004 Florida conviction for obscene telephone calls (paragraph 54 of the presentence investigation report); (2) a 2004 Florida conviction for driving under the influence (paragraph 55); (3) a 2004 Florida conviction for unlawful possession of handcuff keys (paragraph 57); and (4) a 2007 Florida conviction for aggravated assault (paragraph

58).[19]  (Motion at 74.)  Petitioner also alleges a related claim of ineffective assistance of counsel. (*Id.* at 75.)

Petitioner's argument is procedurally defaulted because he failed to raise it on appeal.  The ineffective assistance claim lacks merit because at sentencing, counsel raised and preserved Petitioner's objections, particularly Objection No. 9, to the criminal history points included in the presentence investigation report.  (Sentencing Tr. II at 4-5, 34.)  The fact the Court did not rule in Petitioner's favor, i.e., that the Court ultimately assigned 11 of the 12 criminal history points set forth in the presentence investigation report and determined that Petitioner's criminal history was Category V, does not render counsel's performance deficient.[20]  (Sentencing Tr. II at 32.)  *See Strickland*, 466 U.S. at 689.

Furthermore, Petitioner's underlying argument lacks merit; the Court did not err in assigning two criminal history points each to the convictions for driving under the influence and unlawful possession of a handcuff key, nor did the Court err in assigning one criminal history point each to the convictions for the obscene telephone calls and the aggravated assault.[21]  Appellate

---

[19] Petitioner's 1989 Massachusetts conviction for assault and battery with a dangerous weapon (paragraph 42 of the presentence investigation report) is also cited in Ground Twenty-Five (Motion at 74), but that conviction did not result in any criminal history points, pursuant to USSG § 4A1.2(e)(3), which provides essentially that a prior sentence that is not within certain time periods is not assigned criminal history points.  To the extent that Petitioner argues that the conviction is too old to qualify as a predicate offense under 18 U.S.C. § 924(e), the argument lacks merit, pursuant to Application Note 1 to USSG § 4B1.4, which provides in relevant part that the time periods relevant for criminal history points, pursuant to section 4A1.2, do not apply "to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e)."

[20] The Court determined that eleven criminal history points, rather than twelve as included in the presentence investigation report, applied because it reduced by one point the criminal history points assigned to a New Hampshire conviction that Petitioner does not challenge in Ground Twenty-Five of the section 2255 motion.  (Sentencing Tr. II at 32.)  Otherwise, the Court's conclusions with respect to criminal history points follow the criminal history points as set forth in the presentence investigation report.  (*Id.*)

[21] USSG § 4A1.1(b) provides in relevant part that two criminal history points are added "for each prior sentence of imprisonment of at least sixty days."  USSG § 4A1.1(c) provides in pertinent part that one criminal history point is added for each prior sentence not counted in subsection (b).  According to the presentence investigation report, Petitioner's convictions for driving under the influence and unlawful possession of a handcuff key each resulted in a sentence of one year, with the sentences to be served concurrently with each other; these convictions appropriately resulted in two criminal history points each, pursuant to section 4A1.1(b), regardless of credit for time served.  The

counsel was not deficient for failing to include a non-meritorious argument on appeal.  *See Hart*, 933 F.2d at 83.

### 18. Claim regarding the cumulative effect of the ineffective assistance of counsel claims (Ground Twenty-Six)

In Ground Twenty-Six, Petitioner does not allege specific facts, but rather argues that his various other claims of ineffective assistance of counsel should be viewed cumulatively.  (Motion at 76.)  Because Ground Twenty-Six does not allege any specific facts independent of those alleged in his other claims, and because, as explained above, the other claims lack merit, there is no basis for Petitioner's claim that the cumulative effect of any errors by counsel prejudiced Petitioner.  *See David*, 134 F.3d at 478; *Dugas v. Coplan*, 428 F.3d 317, 335 (1st Cir. 2005) (recognizing that "'*Strickland* clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced'") (quoting *Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989) (citing *Strickland*, 466 U.S. at 694)).

## II.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255 (ECF No. 135).  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to

---

conviction for the obscene telephone calls resulted in a sentence of 22 days in jail, and the conviction for aggravated assault resulted in a sentence of 24 months of probation; these convictions appropriately resulted in one criminal history point each, pursuant to section 4A1.1(c).

28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of August, 2016.